IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRYL WYNN** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 15-166** |
| **LUKOIL NORTH AMERICA, LLC, et al.** | : | |
| | : | |

**MEMORANDUM**

**KEARNEY, J.**                                                                                       **APRIL 29, 2015**

Plaintiff gas station franchisee, for reasons entirely unrelated to eighteen years' experience in managing his gas station, fell into financial problems beginning in 2012 and 2013 resulting in several "returned" payments for purchase of fuel and rent. Defendant as landlord and exclusive fuel seller also required payment of over $50,000 for fuel he received without paying that had not been previously reconciled. He could never catch up. He admits he still owes money to Defendant. To avoid termination immediately, he exhausted his working capital of approximately $20,000 as a good faith deposit and signed two repayment agreements to try to work out of the financial difficulty. By August 2014, he was not purchasing fuel and not paying rent. He remains on the premises operating the gas station as a convenience store. On a preliminary injunction record, we find that the Defendant suffers the greater harm and, in the accompanying Order, deny Plaintiff's Motion for Preliminary Injunction.

   **A. Facts adduced at the April 21, 2015 Hearing**

Plaintiff Darryl Wynn ("Wynn") operated a gas station franchise for Defendant Lukoil ("Lukoil") and its predecessor, for over 18 years. Beginning in at least 2012, following the

passing of Wynn's spouse causing him understandable loss and distraction, Wynn delayed or missed numerous regular payments to Lukoil. By April 2013, for reasons largely immaterial that remain disputed, Wynn's delinquent balance to Lukoil totaled $50,703.70. Faced with immediate termination for failure to pay for fuel, Wynn agreed on April 26, 2013 to pay Lukoil an initial amount of $20,000 by exhausting his working capital, and then equal monthly installments of $5,000 until paid in full ("First Repayment Agreement").

After signing the First Repayment Agreement, Wynn continued to be delinquent on monthly payments to Lukoil. There is no dispute that as of March 2014, Wynn owed significant unpaid debts to Lukoil. In March 2014, Lukoil agreed to waive $40,669.00 of Wynn's unpaid debts to help him move forward in exchange for Wynn signing a second installment payment agreement for the remaining outstanding balance to Lukoil, totaling $20,281.14. Wynn agreed to $400 weekly payments to Lukoil until the balance was paid, and in exchange, Lukoil required that Wynn sign a release and covenant not to sue, fully releasing any and all claims that he may have against Lukoil. Wynn signed this agreement on March 31, 2014 ("Second Repayment Agreement"). Wynn concedes that after signing this Second Repayment Agreement, he failed to make payments as agreed.

Wynn's financial situation did not improve. Since August 2014, Wynn failed to sell any gasoline or obtain any new fuel deliveries. On October 2, 2014, Lukoil sent Wynn a Notice of Termination of the franchise agreement, with termination effective October 14, 2014. Wynn does not contest that he owed $43,954.36. Lukoil gave Wynn twelve days to vacate the premises. He has not done so. Wynn now manages a convenience store on Lukoil's property without paying rent or taxes and not buying fuel.

Based on the evidence presented at the preliminary injunction hearing, Wynn currently owes Lukoil approximately $85,000. Wynn does not contest the amount of debt owed Lukoil. He claims the manner in which Lukoil managed their relationship and negotiated payments caused him financial hardship. Specifically, Wynn claims that by requiring him to pay the approximately $20,000 representing his working capital to pay down his $50,000 debt in April 2013, Lukoil created an impossible financial situation for Wynn, from which he could never recover.[1] Wynn argues that had Lukoil been more reasonable in negotiating repayment of his debts, he would have been able to recover from his defaults. Lukoil responds that in signing the Second Repayment Agreement, Wynn released any and all claims it may have had under federal or state law and that he cannot now complain of unreasonableness by Lukoil.

Whether Lukoil's requirement that Wynn release his claims in exchange for an agreement to forego termination comports with relevant provisions of the PMPA in light of 15 USC 2805(f), is one of the issues that the Court will likely revisit at the summary judgment stage. In addition, there is a dispute regarding whether Lukoil's notice of a mere twelve (12) days complies with the PMPA. The Court will likely revisit Wynn's substantive claims under the PMPA and under relevant state law at the summary judgment stage.

### B. Analysis

Wynn cannot establish grounds for entry of a preliminary injunction requiring Lukoil to ignore the substantial debt owed to it by a bankrupt debtor[2] and sell fuel to Wynn.

---

[1] Like the plaintiff in *Hillmen, Inc. v. Lukoil North America, LLC*, 985 F.Supp.2d 657 (E.D.Pa. 2013), Wynn suggests that Lukoil's handling of his past due balances caused his financial inability to recover from debts. Wynn presents no evidence that Lukoil's conduct was outside the scope of its allowable business discretion, or was otherwise unlawful.

[2] It is undisputed that Wynn filed a petition for bankruptcy in December 2014.

3

1. **Wynn's motion is untimely.**

As a threshold matter, this Court may decline to exercise its equity power to issue an injunction because Wynn's Motion for preliminary injunction was filed more than thirty (30) days after the termination took effect. Wynn filed his Motion for a preliminary injunction ninety-two (92) days after Lukoil's purported termination of the franchise. Because Lukoil provided less than ninety (90) days' notice before termination pursuant to §2804(b)(1), §2805(b)(4)(C) governs and directs that the Court "need not" exercise its equity powers to protect Wynn's franchise rights. Given that Wynn, also a bankrupt debtor in the United States Bankruptcy Court, is acting *pro se* in this matter, we will not deny *ab initio* his motion as being two days late.

2. **Wynn cannot preliminarily establish all three elements for injunctive relief.**

The PMPA authorizes a preliminary injunction to preserve the franchise relationship during termination litigation. 15 U.S.C. §2805(b). The PMPA sets a lower threshold for obtaining preliminary injunctive relief than ordinarily permitted under the Federal Rules of Civil Procedure. *See, e.g., Brownstein v. Arco Petroleum Products Co.,* 604 F.Supp. 312, 314 (E.D.Pa. 1985). To award equitable relief, the plaintiff must show: 1) it is a franchisee under a covered franchise agreement which has been terminated or not renewed[3]; 2) there are "sufficiently serious questions going to the merits to make such questions a fair ground for litigation"; and, 3) the hardships imposed upon him by a denial of the injunction exceed the hardships imposed on the franchisor by granting the injunction. 15 U.S.C. § 2805(b)(2). A

---

[3] Defendants concede for purposes of this preliminary injunction that Wynn is a franchisee and that it terminated the franchise relationship effective October 14, 2014.

franchisee's long-time debt to the franchisor with minimal chance of recovery is a ground for weighing this balance in the franchisor's favor. *Hillmen, Inc, supra*, 985 F.Supp.2d 657.

*Is there a sufficiently serious question warranting injunctive relief pendente lite?*

As to a "sufficiently serious question", Defendants claim that the October 2, 2014 notice of termination conforms to PMPA's requirements and, accordingly, there is no sufficiently serious question going to the merits to form a fair ground for litigation. The PMPA imposes a notice requirement on franchisors regarding non-renewal or termination of a franchise. Under 15 U.S.C. §2804(c), the franchisor is required to give notice of its intent to terminate the franchise agreement, the reasons therefore, the date the termination will take effect, and be accompanied by a summary of the PMPA. In general, the PMPA requires ninety (90) days advance notice before termination, 15 U.S.C. §2804(a), although a shorter period is permitted where it would "it would not be reasonable" for a franchisor to provide the ninety (90) days.

At this stage, Lukoil has raised several grounds where it would not be reasonable for it to provide ninety (90) days' notice. *See e.g. Hillmen, Inc., supra*, 985 F. Supp.2d at 666-67. Wynn admittedly had not sold gasoline since August 2014 and had insufficient funds for new gasoline deliveries. In fact, there were long periods of time in 2013 and 2014 where Wynn had not sold any fuel. In 2013 and 2014, Lukoil tried to work with its longtime franchisee including in two repayment agreements and forgiveness of over $40,000 in debt. At the time of the notice of termination, Wynn had not paid outstanding invoices and was again late on his monthly rent. Wynn's only response relates to the loss of his operating capital in 2013 causing a domino-effect loss to his business. As there are no unresolved questions regarding whether it was reasonable for Lukoil to give less than ninety (90) days' notice to Wynn of its intent to terminate, Wynn has not

shown "serious questions" which would warrant the requested injunctive relief. 15 U.S.C. §2805(b)(2)(A)(ii).

*Wynn does not show the balancing of hardships weighs in his favor.*

Alternatively, Wynn does not show that the balance of hardships weighs in his favor. He has been operating a convenience store at Lukoil's gas station property without paying rent or real estate taxes since at least August 2014. Denial of the injunction will only continue that status quo with no payments to Lukoil during the pendency of this case, although Lukoil may proceed on its eviction proceedings in state court. Wynn admits that he had financial troubles beginning at least in 2012, with multiple drafts returned in 2013 and 2014. Wynn does not dispute that Lukoil forgave debts in excess of $40,000. He admits that he owes Defendants for unpaid fuel deliveries, and has failed to pay rent or real estate taxes or sell gasoline since August 2014. No one disputes that Wynn has a substantial outstanding balance with Lukoil and that Wynn would like to pay it.

He admittedly does not have the financial resources to do so. Despite Wynn's apparent financial hardships, the Court finds that the hardship to Lukoil is substantial. Lukoil, the owner of the gas station, loses profits and rent every day. It has no assurance of payment. Given Wynn's bankruptcy, it appears unlikely that Wynn will overcome the financial setbacks and make the franchise financially successful for Lukoil if the Court granted injunctive relief. The Court, and apparently Lukoil, appreciate the financial losses arising from Wynn's personal tragedy, but at some point Lukoil is entitled to move forward and collect rent, real estate taxes and use its property as a gas station. We have reached that point.

### III.     Conclusion

Upon the evidence presented, we cannot conclude that Wynn stands to suffer a greater hardship than Lukoil if the preliminary injunction is not granted. He also has not established a serious question going to the merits or that the balancing of hardships weighs in his favor. The accompanying Order denies Wynn's request for a preliminary injunction pursuant to 15 U.S.C. §2805(b)(2).