IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRYL WYNN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO.  15-166** |
| **LUKOIL NORTH AMERICA, LLC, et** | : | |
| **al** | : | |

**MEMORANDUM**

**KEARNEY, J.**                                                                                   **August 28, 2015**

Contracts often provide specific remedies upon a default in performance. These remedies create prompt financial hardship for the defaulting party and long-standing business relationships end with considerable regret.  No one likes to lose a mutually beneficial business relationship. We must enforce the parties' benefit of the bargain.

As detailed in our April 29, 2015 Memorandum Opinion denying Plaintiff's Motion for Preliminary Injunction (ECF Doc. No. 36), Plaintiff gas station franchisee defaulted in his obligations to pay Defendant franchisor for fuel, rent, taxes and utilities.   By August 2014, he could not purchase or sell fuel or pay rent and taxes.  Nevertheless, he remained in the gas station selling sundries but not paying rent or taxes.  In October 2014, Defendant franchisor terminated his franchise by written notice.  Plaintiff *pro se* sued in January 2015 claiming the franchisor violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §2802 by wrongfully terminating his franchise and for state law claims of breach of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress.  He did not claim any type of tortious interference with his contract.  After discovery, and particularly mindful of our liberal review of *pro se* advocacy to ensure legally cognizable claims are resolved on their merits,  we

find Plaintiff cannot adduce a genuine issue of material fact and grant Defendant's motion for summary judgment dismissing the Complaint and entering judgment on liability on the breach of contract counterclaim.

### I. Undisputed Facts.

Darryl Wynn ("Wynn") operated a gas station in Chester, Pennsylvania under a franchise agreement with Lukoil North America[1] ("Lukoil") for almost twenty years. Wynn claims he ran a successful business, grossing over two hundred thousand dollars ($200,000) a year in sales. (Am. Compl. ECF Doc. No. 4, p.3). Wynn's wife Veronica died of breast cancer in April 2012. App. 223.[2]  Paying for Veronica's health care drained much of Wynn's financial reserve, allegedly causing him to spend money intended for gas station working capital.  App. 182. Wynn claims the stress of losing his wife led him to financial problems.  (Am. Compl. ECF Doc. No. 4, 3).

Wynn's franchise agreement with Lukoil required him to maintain and sell certain amounts of gasoline, but allowed him to receive shipments of fuel before paying his account balance. SOF ¶¶3, 4; App. 10. The franchise agreement also required Wynn to pay rent, taxes and utilities.  After Veronica's death, Wynn did not pay for Lukoil deliveries in December 2012 and March 2013, and owed approximately fifty thousand dollars ($50,000) to Lukoil.  SOF ¶4. Around the same time, Wynn began having trouble making his monthly rent payments to Lukoil. *Id.* ¶2.

---

[1] Wynn originally signed his franchise agreement with Mobil Oil Corp. After several mergers, sales and acquisitions, Lukoil owned the franchisor rights.  Lukoil honored the validity of Wynn's earlier franchise agreements. Wynn and Lukoil signed their first franchise agreement in 2004.

[2] The Court's Policies require a Statement of Undisputed Facts ("SOF") and Appendix ("App.") filed in support of a summary judgment motion.

Despite Wynn's apparent default in several respects, Lukoil elected to negotiate a repayment plan spread out over several years. SOF ¶7. In an April 2013 agreement (the "2013 Repayment Agreement"), Wynn agreed to pay back the fifty thousand dollars ($50,000) with a twenty thousand dollar ($20,000) initial payment, and five thousand dollar ($5,000) monthly installments. *Id.* ¶8. If Wynn missed a payment, he agreed to immediately repay the entire debt. *Id.* Wynn, claiming Lukoil's representative demanded he make a large first payment or else lose his franchise, made the initial payment by exhausting his working capital. In July 2013, the parties renewed their franchise agreement. SOF ¶1. Wynn made payments under the 2013 Repayment Agreement for several months, but missed a payment in September 2013. After this missed payment, Lukoil stopped making fuel deliveries to Wynn's franchise. SOF ¶¶9, 10; App. 183.

Wynn and Lukoil then entered into a second repayment agreement in March 2014 (the "2014 Repayment Agreement"). Under the 2014 Repayment Agreement, Lukoil waived approximately forty thousand dollars ($40,000) of Wynn's debt in exchange for Wynn's promise to make weekly payments of four hundred dollars ($400) and a release of any claim against Lukoil. *Id.* ¶11, 12. Under the 2014 Repayment Agreement, Wynn started receiving fuel shipments, and his business operated smoothly for several months. In July 2014, Wynn stopped paying rent. App. 167. In August 2014, Wynn once again had trouble making his weekly payments and Lukoil once again ceased delivering fuel to Wynn's franchise. SOF ¶15, 16.

On October 2, 2014, Lukoil notified Wynn by letter of terminating the franchise and demanding payment of Wynn's outstanding balance. App. 144-145. Lukoil identified numerous breaches of the franchise agreement, including:

> (i)        intentionally not operated the Marketing Premises to be employed under franchise in connection with sale or distribution of motor fuel, for a period of

seven (7) consecutive days, i.e., in which the period at least August 18, 2014-present or such lesser period which under the facts and circumstances constitutes an unreasonable period of time;

(ii)    intentionally not operated the Marketing Premises to be employed under the franchise during operating hours required by the PMPA Franchise Agreement, and intentionally failed to keep the motor fuels business open and in normal operation for those periods;

(iii)    failed to use good faith and best efforts to maximize the sales of Products at the Marketing Premises as required by the PMPA Franchise Agreement; and

(iv)    failed to maintain an adequate inventory of motor fuel to serve the needs of the motoring public at the Marketing Premises.

*Id.* ("Notice of Termination").

Lukoil terminated the franchise agreement, demanding Wynn vacate the franchise premises within twelve (12) days. Wynn does not dispute he did not operate the station to sell fuel between September 2013 and March 2014.  SOF ¶10.  Lukoil claims, and Wynn does not dispute, he has failed to purchase fuel since August 18, 2014. App. 166.  Wynn has not abandoned the franchise premises and continues to operate the premises as a convenience store, simply not selling motor fuel.  App. 167.[3]

On January 21, 2015, Wynn filed suit *pro se*[4] against Lukoil and its officers (collectively "Lukoil").  Lukoil filed counterclaims for breach of its franchise agreement and unjust

---

[3] Wynn filed for Chapter 13 Bankruptcy on December 15, 2014.  The bankruptcy court dismissed his petition on June 25, 2015. *See In re Darryl L. Wynn*, No. 14-19823 (Bankr. E.D. Pa.)

[4] *Pro se* litigants receive the benefit of the doubt concerning their written communications with the Court. "A document filed *pro se* is 'to be liberally construed,' *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Id.* (internal quotation marks omitted). *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice")

4

enrichment.  We earlier denied Wynn's Motion for Preliminary Injunction. *See Wynn v. Lukoil N. Am., LLC*, No. 15-166, 2015 WL 1954275 (E.D. Pa. Apr. 29, 2015).

## II.  Analysis

Lukoil moves for summary judgment on the Complaint and for liability on its counterclaims.  Federal Rule of Civil Procedure 56(c) allows summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.")). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Any inferences "to be drawn from the evidence…must be viewed in the light most favorable to the party opposing the motion." *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989).

The nonmoving party may not rely solely on the pleadings in response to a motion for summary judgment.  *Celotex Corp.*, 477 U.S. at 323.  Where the nonmoving party bears the burden of proof for its claims, the moving party is entitled to summary judgment if it can show a lack of evidence supporting those claims. *Pennoyer v. Marriott Hotel Servs., Inc.*, 324 F.Supp.2d 614, 617 (E.D. Pa. 2004). "The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and it cannot rely on unsupported assertions, conclusory allegations, or mere suspicions or beliefs in attempting to survive such a motion." *Lind v. Jones, Lang Lasalle Americas, Inc.*, 135 F. Supp. 2d 616, 620

(E.D. Pa. 2001)(citing *Celotex v. Catrett, supra,* 477 U.S. at 325);   (*Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 249).

### A.    Lukoil appropriately terminated the franchise under the PMPA.

The PMPA allows franchisors to terminate franchise agreements despite providing broad protection to franchisees.   *Patel v. Sun Co.*, 141 F.3d 447, 451-52 (3d Cir. 1998); *Rodgers v. Sun Ref. & Mktg. Co.*, 772 F.2d 1154 (3d Cir. 1985).   "Although the [PMPA's] primary goal is to provide protection to franchisees, it also provides for the 'legitimate needs of a franchisor to be able to terminate a franchise ... based upon certain actions of the franchisee, including certain failures to comply with contractual obligations....'" *Rodgers,* 772 F.2d at 1158, citing *Sun Ref. & Mktg. Co. v. Rago*, 741 F.2d 670, 672 (3d Cir. 1984).   Section 2802 of the PMPA enumerates permissible grounds for a franchisor to terminate a franchise relationship. 15 U.S.C. §2802(b). In particular, section 2802(b)(1) permits termination where (1) notification requirements (of section 2804) are met; and (2) termination is based on a ground described in §2802(b)(2).

*Grounds for termination*

Lukoil's October 2, 2014 Notice of Termination identified to Wynn several reasons for terminating its franchise agreement including Wynn's failure to operate the premises as a distributor of motor fuel for seven (7) consecutive days, intentionally failing to keep the motor fuels business open and in normal operation, failing to use good faith and best efforts to maximize the sale of motor fuels as required by the franchise agreement, and failing to maintain an adequate supply of motor fuel at the franchise premises.   App. 145-146.   Wynn does not dispute Lukoil's stated reasons for termination.   Wynn admits he did not sell fuel for seven (7) consecutive days prior to Lukoil's October 2, 2014 Termination Letter and admits he operated

the premises as a convenience store only since August 18, 2014.  App. 166-167.  Wynn's admitted violations of the parties' franchise agreement indeed fall within the scope of the PMPA.

Section 2802(b)(2)(A) of the PMPA provides a franchisor may terminate a franchise relationship if there is a "failure by the franchisee to comply with any provisions of the franchise, which is both reasonable and of material significance to the franchise relationship." §2802(b)(2)(A).[5]  Paragraphs (B) and (C) of section 2802(b)(2) likewise permit franchisors may terminate a relationship where a franchisee fails "to exert good faith efforts to carry out the provisions of the franchise" or upon "occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise … is reasonable."  *Id.*

"[A] franchisee's failure to sell fuel for seven (7) consecutive days is deemed an 'event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise is reasonable.'"  *Hillmen v. Lukoil North America, LLC*, No. 13-4239, 2015 WL 3947960, *7 (E.D. Pa. 2015) (citing 15 U.S.C. § 2802(c)(9)(A)). Undisputed evidence demonstrates Lukoil gave Wynn several opportunities to rectify his breaches and comply with the franchise agreement terms, yet he was unable to do so.  Wynn's admitted failure to purchase or sell motor fuel, in breach of express terms of the parties' franchise agreement, is reasonable grounds for Lukoil's termination under the facts of this case. *See e.g. Rodgers*, 772 F.2d at 1157; *Hillmen*, *supra* at *7 (citing *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 595 (3d Cir. 1989)). [6]

---

[5] While the PMPA does not define reasonable or material significance, "other courts have determined that, in keeping with rules of statutory construction, the common ordinary meaning of these terms should apply." *NSY, Inc. v. Sunoco, Inc.*, 218 F. Supp. 2d 708, 712 (E.D. Pa. 2002) (internal citations omitted). "'Reasonable' and 'material[ly] significant' terms of a contract were those that were 'vital to the franchise relationship.'" *Id.* (citing *Di Napoli v. Exxon Corp.*, 549 F.Supp. 449, 452 (D.N.J.1982)).

While Wynn does not dispute the facts prompting Lukoil's termination, he claims Lukoil caused him to violate the agreement, and therefore violated the PMPA, by acting in an "unconscionable [and] wanton" manner when they "refused to extend a payment plan for the misapplied funds." (ECF Doc. No. 4, p.5) Wynn provides no support.  His unsubstantiated claims do not create genuine issues regarding whether he failed to sell fuel for more than seven consecutive days. The underlying reason for Wynn's debt to Lukoil is immaterial. Wynn is unable to adduce evidence showing a question of material fact as to his failure to meet all of the franchise requirements. Any one of the violations listed in Lukoil's Termination Letter constitute *per se* justifications to terminate the franchise.

*Notice*

PMPA also requires notice for valid termination. Section 2804 requires franchisor provide ninety (90) days' notice of termination, or when "it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination or nonrenewal takes effect…such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notice is reasonably practicable…" 15 U.S.C. § 2804 (a), (b)(1)(A).  PMPA does not specifically define what constitutes a reasonable circumstance for less than ninety (90) days' notice.  Judge Quinones of our Court recently reviewed this issue:

> A review of case law where courts have addressed the notice issue, however, makes it clear that a determination of reasonableness must be done on a case by case basis. When making that determination, some courts have held that less than ninety days' notice of termination may be given, if, as alleged here, the franchisee has defaulted monetarily and failed to operate for seven consecutive days." *See*

---

[6] The PMPA also permits the franchisor to terminate a franchise "if the franchisee fails to pay sums due under the franchise agreement."  *Patel,* 141 F.3d at 452, n.1 (internal citations omitted) (citing § 2802(b)(2)(C) (incorporating § 2802(c)(8)).  Wynn also does not dispute his failure to pay rent, utilities and taxes as outlined in the franchise agreement.  App. 167.

*e.g., Equilon Enterprises, L.L.C. v. Rahim, Inc.,* 80 Fed.Appx. 463, 468 (6th Cir.2003) (allowing immediate termination and noting that the notice provision "has been interpreted to allow franchisors significant latitude when a franchisee has been delinquent in making payments to the franchisor."); *Dedvukaj v. Equilon Enterprises, L.L.C.,* 301 F.Supp.2d 664, 669–70 (E.D.Mich.2004), *aff'd,* 132 Fed.Appx. 582 (6th Cir.2005) (allowing immediate termination for delinquent payments); *Marathon Petroleum Co. v. Pendleton,* 889 F.2d 1509, 1513 (6th Cir.1989) (finding ten days' notice reasonable given franchisee's "declining interest in operating the station and failure to maintain adequate gasoline supplies."); *Atlantis Petroleum, LLC v. Getty Petroleum Marketing, Inc.,* 2011 WL 4348285, *11 (E.D.Pa. Sept. 16, 2011) (finding thirty days' notice reasonable where franchisee had substantial outstanding debt to franchisor and history of untimely payments); *Loomis v. Gulf Oil Corp.,* 567 F.Supp. 591, 597 (M.D.Fla.1983) (eight-day notice justified when franchisee developed deficiency of $56,233.52 in thirty to sixty days); *California Petroleum Distributors v. Chevron U.S.A. Inc.,* 589 F.Supp. 282, 289 (E.D.N.Y.1984) (finding sixteen days' notice of termination for nonpayment of past-due amounts was reasonable notice in view of fact that it came after four months of demands for payment); *California Petroleum Distributors v. Chevron, U.S.A.,* 589 F.Supp. 282, 289 (E.D.N.Y.1984) (finding that a sixteen days' notice of termination under the circumstances where the franchisee had accumulated a substantial debt exceeding its credit limit with the franchisor)).

*Hillmen, Inc. v. Lukoil N. Am., LLC*, 985 F. Supp. 2d 657, 666 (E.D. Pa. 2013).

Evaluating Lukoil's notice here, Wynn's failure to pay for his fuel deliveries on time and failure to keep and sell adequate fuel reserves gives Lukoil more leeway in providing shorter notice of termination. *See e.g., Equilon Enterprises, L.L.C.,* 80 Fed.Appx. at 468; *Atlantis Petroleum,* 2011 WL 4348285, at *11. Lukoil notified Wynn of his default status many times between his first missed payment in December 2012 and the termination letter in October 2014. The 2013 and the 2014 Repayment Agreements notified Wynn of Lukoil's position on termination.  Lukoil provided Wynn with two "repayment" plans. He defaulted on both. Wynn's claim now is Lukoil improperly threatened him with termination if he did not pay the initial payment.  Wynn lacks a credible defense he did not know of the possible termination. Wynn, a seasoned and accomplished franchisee who from all accounts is a honorable businessperson, knew then and now he owed Lukoil money.  He has stayed on the premises without paying taxes

or rent.   He stopped purchasing fuel or paying rent and taxes.   While the final termination letter defined the end of the relationship, Wynn cannot credibly claim surprise.   Lukoil's notice is proper under these circumstances.   Lukoil acted in a lawful manner when it terminated the franchise relationship and Wynn's PMPA claims are dismissed.

**B.    Wynn adduces no evidence to support a claim for breach of duty of good faith and fair dealing.**

Wynn asserts a state law claim for Lukoil's alleged breach of implied contractual duty of good faith and fair dealing. As to this claim, Lukoil cannot be found in breach.   There is no dispute beginning at least in 2013, Lukoil took several steps to preserve its longstanding relationship with Wynn, forgiving a large portion of Wynn's outstanding debt, and negotiating an affordable monthly payment plan to recoup the balance. When Wynn could not make his monthly payments, Lukoil restructured the repayment plan again in 2014, allowing Wynn to repay his debt at a rate of four hundred dollars ($400) per week.   There are no facts to support Wynn's allegations Lukoil breached an implied duty to make further concessions to him.

**C.    Wynn adduces no evidence to support a claim for intentional infliction of emotional distress under state law.**

Wynn seeks recovery for the alleged tort of intentional infliction of emotional distress. To prevail on this claim, he must prove Defendants engaged in extreme and outrageous behavior, causing him severe emotional distress, manifesting in some type of physical injury.   *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 992 (Pa.  1987). Like the unsuccessful plaintiff in *Kazatsky*, Wynn offers no evidence of outrageous, severe, pervasive conduct by Defendants. Wynn also offers no evidence of physical injury.

We do not find evidence creating a genuine issue of material fact allowing Wynn's state law claims to proceed to the jury.   His claim must be dismissed.

**D.      This Court will not assume jurisdiction over a tortious interference argument never plead and lacking any discovery.**

In response to Lukoil's motion for summary judgment, Wynn raises new allegations against Lukoil for alleged tortious interference with prospective contractual relations. (Resp. Mot. Summ. J., ECF Doc. No. 56, p.9)    Stating only "[I]nvestors have come to invest in the station," (referring to the franchise property), Wynn claims two possible investors approached him about fronting Wynn money to repay Lukoil and allow Wynn to retain his franchise. *Id.* The first investor apparently visited Wynn at some point in August 2014, offering Wynn a loan to relieve him of his Lukoil debt. Wynn claims Lukoil refused the investor's offer by telling the investor Wynn is not worth the loan risk. *Id.* Wynn does not support his assertion with any competent evidence.

Wynn also claims an investor made an offer in May 2015.  (Resp. Mot. Summ. J., ECF Doc. No. 56, p.9) Wynn claims this investor backed out when he learned Lukoil intended to evict Wynn shortly thereafter, as evident on the public record.  *Id.*   Again, there is no factual evidence to support this new assertion.

Wynn claims Lukoil's actions interfered with his ability to complete both the August 2014 and the May 2015 "deals". Lukoil and its representatives deny any knowledge about the May 2015 deal, stating they would have considered any offer Wynn presented them. (Def. Reply Brief, ECF Doc. No. 60, p.5)

Wynn sues under the PMPA invoking this Court's federal question jurisdiction. His tortious interference claims cannot be considered because they were not plead in a timely manner, and even under the liberal *pro se* standard, cannot be included in this Court's

jurisdiction over the balance of Wynn's suit. [7] As such, we decline to exercise supplemental jurisdiction over Wynn's tortious interference unplead argument. (Am. Compl., ECF Doc. No. 4, ¶ 11) (citing 15 U.S.C. § 2801; 28 U.S.C. § 1331; 28 U.S.C. § 1367(a)) .

### E.    Lukoil's breach of contract and unjust enrichment counterclaims.

Lukoil, as the contracting party to the July 2013 franchise agreement, seeks summary judgment on Wynn's liability on its breach of contract and unjust enrichment claims.   "It has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement or express contract." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006).   As there is a written franchise agreement governing the relationship between these parties, we deny Lukoil's motion as to unjust enrichment and dismiss this claim.   *Id.*

Wynn's defense to contract liability is duress and coercion.   In his "duress" defense, Wynn alleges Lukoil forced him to sign the 2013 and 2014 Repayment Agreements, including a waiver provision, or his franchise would be terminated immediately. Wynn claims the 2013 and 2014 Agreements signed by him depleted his working capital reserves and destroyed his business.

As part of the 2014 Repayment Agreement, Wynn signed a waiver releasing Lukoil from all claims. Wynn claims he only signed this agreement because he was under duress from Lukoil to sign. Lukoil claims Wynn already defaulted when he signed the 2014 Repayment Agreement.

---

[7] Allowing Wynn to add claims against Lukoil at the summary judgment phase prejudices Lukoil's ability to adequately defend against these claims, especially after the close of the discovery period. *See Laurie v. Nat'l Passenger R.R. Corp.*, 105 F. App'x 387, 392 (3d Cir. 2004) (affirming district court's refusal to allow plaintiffs to assert a new theory of liability in response to a motion for summary judgment, citing "additional discovery, costs, and preparation to defend against the new theory.").

Lukoil claims it offered Wynn a simple choice, either sign the agreement releasing Lukoil from all claims, or Lukoil would terminate the franchise.

"If a franchisor imposes renewal terms which violate the PMPA, the franchisee has a cause of action although he has accepted the terms under duress or protest." *RKJ Enterprises, Inc. v. Sun Co., Inc.*, No. 98-2179, 1998 WL 833857, at *3 (E.D. Pa. Dec. 2, 1998) (citing *Pro Sales v. Texaco, U.S.A.,* 792 F.2d 1394, 1399 (9th Cir.1986)).  However, "…to raise the defense of duress, a party must prove three elements: (1) a wrongful threat; (2) fear that induces a loss of free will and judgment; and (3) that there was no immediate legal remedy available as an alternative to executing the agreement." *Hotel Employees & Rest. Employees Union v. Sage Hospitality Res., L.L.C., Local 57*, 299 F. Supp. 2d 461, 466 (W.D. Pa. 2003) *aff'd sub nom. Hotel Employees & Rest. Employees Union, Local 57 v. Sage Hospitality Res., LLC*, 390 F.3d 206 (3d Cir. 2004) (citing *Warner–Lambert Pharmaceutical Co. v. Sylk,* 471 F.2d 1137, 1143 (3d Cir.1972).

Wynn admits his defaults by failing to sell fuel for seven consecutive days in September 2013 and March 2014, and failing to operate the franchise location as a gas station. Lukoil could have simply terminated the franchise at either point but twice chose to give Wynn an opportunity to salvage the relationship. Such offers can hardly be construed as a "wrongful threat."  There is also no evidence Lukoil's ultimatums to Wynn to either sign the Repayment Agreements or be terminated induced enough fear to cause a "loss of free will and judgment." While losing his franchise may have been a painful option for Wynn, his weak bargaining position cannot be considered such a deprivation as to make a duress defense appropriate. Wynn could have filed the current action instead of signing the agreement, meaning he had a legal remedy available as an alternative to executing the agreement.

The PMPA only prohibits waiver if giving up rights is "a condition of entering into or renewing the franchise relationship." *See* 15 U.S.C. § 2805(f). *Id.*; *see Mac's Shell Service Inc., v. Shell Oil Products Co. LLC.*, 559 U.S. 175, 192-93 (2010). As Lukoil argues, the 2014 Repayment Agreement did not renew the franchise agreement; the parties renewed the franchise agreement in July 2013. By the signing date, Wynn had failed to sell fuel for seven consecutive days, a *per se* justification for franchise termination under the PMPA. As such, the PMPA does not prohibit the release in Lukoil's proposed 2014 Repayment Agreement as it is not a renewal of the franchise and Lukoil had a valid right to terminate the franchise relationship.

Releasing claims against a franchisor is permitted if the franchisee is compensated. *Santiago-Sepulveda v. Esso Standard Oil Co. (Puerto Rico)*, 643 F.3d 1, 8 (1st Cir. 2011) (("Congress was apparently willing to allow such waivers or releases if compensated.") (citing H.R.Rep. No. 103–737, at 6 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 2782; S.Rep. No. 103–387, at 4 (1994)). Lukoil "compensated" Wynn as part of the 2014 Repayment Agreement by forgiving a forty thousand dollar ($40,000) debt, providing a reduced weekly repayment plan ($400) and continuing fuel deliveries. This compensation resolves issues of duress surrounding the waiver clause under *Santiago-Sepulveda*.[8]

At oral argument, Wynn also posited his recent tortious interference theory as a defense to Lukoil's breach of contract claim. Under any of Wynn's fact scenarios, any alleged tortious

---

[8] A voluntary waiver of a right to sue is valid. *Coast Vill., Inc. v. Equilon Enterprises, LLC*, 163 F. Supp. 2d 1136, 1178 (C.D. Cal. 2001) ("There is no broad prohibition on the *voluntary* waiver of rights guaranteed under state or federal law that may otherwise be waived.") *aff'd*, 64 F. App'x 36 (9th Cir. 2003) "It is only when *renewal* is *conditioned* on acceptance of such term that a contract of adhesion is formed, and [Section 2805(f)] is violated." *Id.* (citing *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir.1999)(emphasis added)). Here, Wynn could have elected not to sign the 2014 Repayment Agreement stripping him of his right to bring suit. As there is no evidence Lukoil conditioned the July 2013 renewal of the franchise agreement on waiving a right to sue, Lukoil did not violate § 2805(f).

interference occurred after he breached the franchise agreement. This claim is not a defense. As we do not assume supplemental jurisdiction on any tortious interference claim, we do not opine on his ability to recover tort damages in state court on this claim.

As shown above, Wynn cannot adduce genuine issues of material fact allowing the duress/coercion defense to proceed to trial.  Wynn released any claim before the April 2014 Repayment Agreement.   Further, we do not find Lukoil's negotiation ultimatum constituted duress or coercion.  Wynn may be correct in some hypothetical instance of disparate bargaining authority, but not here where the PMPA provides him with ample protections and he could have walked away without little or no harm.   At oral argument, Wynn could not cite an instance of coercion after the April 2014 Repayment Agreement.  We further find Wynn does not adduce any evidence creating a genuine issue of material fact regarding duress or bad faith. Absent any contrary evidence and as a matter of law, Wynn cannot claim duress.

We grant Lukoil's motion for summary judgment as to liability on its breach of contract counterclaim.

### III.    Conclusion

From all accounts, Wynn is a gentleman and, for almost twenty (20) years, a successful gas station owner in Chester, Pennsylvania.  For reasons, some tragic, his business focus suffered and he lost substantial money.   Lukoil extended two repayment plans.   Wynn could not meet these plans, and after months of not selling Lukoil's gas product or paying rent, Lukoil provided appropriate notice under the PMPA.   Lukoil's termination is proper.  Wynn fails to adduce facts necessary to avoid summary judgment on his plead state law claims.   We do not opine on Wynn's recent arguments regarding tortious interference with prospective contract.

Absent any genuine issues of material fact, our accompanying Order grants Defendants' motion for summary judgment on the Complaint and grants in part, and denies in part, Lukoil's motion for summary judgment on liability on the counterclaim.